950 P.2d 946 (1997)
89 Wash.App. 737
STATE of Washington, Respondent,
v.
Michael NORDSTROM, Petitioner.
No. 38690-5-I.
Court of Appeals of Washington, Division 1.
November 17, 1997.
Publication Ordered February 4, 1998.
*947 James R. Dixon, Neal J. Philip, Ende Subin & Philip Vashon, Nielsen Broman & Associates Pllc, Seattle, for Appellant.
Daniel J. Clark, Seattle, for Respondent.
COX, Judge.
Michael Nordstrom made several appearances in court, without counsel, in response to charges of fourth degree assault and third degree malicious mischief. At each appearance he was advised to return with an attorney, but he never did so. Because, under the circumstances of this case, Nordstrom neither expressly nor impliedly waived his right to counsel and the record demonstrates that he did not understand the consequences of self-representation, we reverse.
In early October 1994, the State charged Nordstrom in King County District Court with fourth degree assault and third degree malicious mischief. At his arraignment, the court provided a group recitation of rights, including the right to counsel. The court then individually advised Nordstrom of the charges against him, answered his questions about the charges, and gave him a copy of the complaint stating the charges.
At a readiness hearing in November, Nordstrom appeared without counsel and requested a continuance to obtain counsel. Nordstrom then began relating the facts of his case to the court. The judge stopped him and advised that trial was the place for presenting one's case. Someone at the hearing, whom we cannot identify from the record before us, then offered to give Nordstrom some "pro bono information." The judge suggested that he take it. When Nordstrom returned to address the judge, he waived his rights to a jury and to a speedy trial. He also requested "full disclosure and discovery" from the State. The court then continued the case for a bench trial.
In January 1995, Nordstrom again appeared in court without counsel. Advising Nordstrom that the offenses were "fairly serious," the court declared: "You get an attorney. If you don't have one[,] be prepared to go to trial the next time you are here. No more continuances at all." The court then continued the case for 30 days.
In March 1995, Nordstrom appeared for trial without counsel. He stated that he did not qualify for a public defender and wanted to apply his monetary resources to his efforts to gain custody of his child. Nordstrom acknowledged that the court had previously advised him to obtain counsel. The judge reminded Nordstrom of the prior warning that there would be no more continuances to obtain counsel. The court then advised Nordstrom of the burden of proof, his right to call witnesses, and his right to remain silent.
The prosecuting attorney advised the judge that Nordstrom had a "green notebook" containing information he hoped to present at trial. The prosecutor expressed concern to the court that Nordstrom did not understand that much of the information contained in the notebook would not be admissible as evidence at trial. The judge stated that he would take up those matters as they arose during the trial. The bench trial proceeded.
At the conclusion of the trial, the court dismissed the malicious mischief charge. But the court found Nordstrom guilty of fourth degree assault and sentenced him to 365 days in jail.
Nordstrom appealed his conviction to the superior court, challenging the validity of his waivers of jury trial and counsel. The superior court found both waivers valid and affirmed the conviction.
We granted discretionary review of the superior court's order. Because Nordstrom only assigns error to and argues the ineffectiveness of the waiver of the right to counsel, we address only that issue.

I. WAIVER OF COUNSEL
A criminal defendant's waiver of his Sixth Amendment right to the assistance of counsel is valid only if it is knowing, voluntary, and intelligent.[1] When an accused properly waives counsel, the accused has a *948 right to self-representation.[2] The decision to proceed pro se must be unequivocal.[3] In evaluating a decision to proceed pro se, the trial court must determine that the accused (1) is competent to stand trial and (2) has made a knowing and intelligent waiver of the right to counsel with "eyes open," which includes an awareness of the dangers and disadvantages of the decision.[4]
The question of what standard of review should be applied to a decision on waiver of counsel is unsettled. Washington cases suggest that the appropriate standard of review is abuse of discretion.[5] But federal case law maintains that the validity of a waiver of counsel is a mixed question of law and fact, subject to de novo review. The United States Supreme Court, in Brewer v. Williams, stated that the question of waiver is not one of historical fact, but requires "`application of constitutional principles to the facts as found.'"[6] The Ninth Circuit consistently applies the de novo standard.[7] We need not decide in this case which standard is appropriate. Under the circumstances of this case, the decision must be reversed under either standard.
We apply our review to the record that was before the King County District Court.[8]
The Washington Supreme Court enumerated the criteria for determining the validity of a waiver of counsel in City of Bellevue v. Acrey.[9] The Supreme Court "strongly recommend[ed]" a colloquy as the best means of assuring that the defendant understands the risks of self-representation. Where there is no colloquy, the record must somehow indicate that the defendant appreciated the danger of proceeding without counsel. This standard is met by a showing that the defendant knew and understood (1) the seriousness of the charges against him, (2) the possible maximum penalty, and (3) that presenting a defense requires the observance of technical rules and is not just a matter of "telling one's story."[10] In applying this test, we are mindful of our Supreme Court's admonition that "only rarely will adequate information exist on the record, in the absence of a colloquy, to show the required awareness of the risks of self-representation."[11]
Here, there was no colloquy on the record. Thus, the question before us is whether this is one of those "rare cases" where the record shows the required awareness of the risks of self-representation. Nordstrom asserts that he was never informed about the seriousness of the offense, the maximum penalty, or that there were technical rules by which he would be bound in presenting his defense. The State contends that the court advised Nordstrom of the risks of self-representation, the nature and the seriousness of the crimes charged, and the technical rules that would apply in making his defense. The State further asserts that Nordstrom impliedly waived the right to counsel by his dilatory conduct.
At the arraignment, the court informed Nordstrom of the charges against him and answered his question about the legal meaning of "assault." Thereafter, *949 when it granted the final continuance in January, the court stated that "these are fairly serious offense[s]." This information was sufficient to advise Nordstrom of the seriousness of the charges against him. The first criterion of the Bellevue test was met.
The record is clear that the court never informed Nordstrom of the maximum penalties he faced if convicted. Thus, the second criterion of Bellevue was not met.
We turn to the third criterion of the Bellevue test. Although the record indicates that the court advised Nordstrom that trying a jury trial was difficult and that the court could not assist him, it does not show that the court adequately apprised Nordstrom of the dangers and disadvantages of self-representation. At his second court appearance, Nordstrom started to relate the facts of the case to the court. The court interrupted him and advised that "[i]t's a difficult thing to try a jury trial case, but I need to let you know that the court can not do anything to assist you, it's called commenting on the evidence... you can't ask the court for help with that." While this statement may have warned Nordstrom of the difficulty of proceeding pro se, it did not adequately inform him of the risks he faced in foregoing the assistance of counsel.
Just prior to trial, the court stated to Nordstrom:
Allright. Now. The procedure is this. The State must provide [sic] the two offenses beyond a reasonable doubt. That is the criminal standard employed. After the State presents its witness, any individual witness, you have an opportunity to question that witness, okay. It must be in the form of a questions only. At the close of the State's claim case you can put on your own case, okay, and you'll have to take the witness stand to testify. You do not have to testify however, and I will remind you of that again. You have absolutely [sic] right to remain silent and not say anything. And the fact that you do so cannot and will not be used against you. Do you understand that?
Yes sir.
These instructions apprised Nordstrom of certain "technical rules" governing the presentation of his case and the fact that he could not simply "tell his story" at trial. But the court did not explain the connection between the technical rules and the dangers of proceeding pro se. Absent such a warning, it is unlikely that an explanation that technical rules will apply will mean anything to a defendant.
The facts of this case illustrate the problem. Almost immediately after the court's pretrial explanation of certain procedural rules, the prosecutor raised the question of the inadmissibility of certain statements in the notebook Nordstrom intended to use at trial. The court replied that it would take up questions regarding the admissibility of evidence as they arose during trial. But the court did not advise Nordstrom that his ignorance regarding the admissibility of evidence, as reflected by the statements contained in his notebook, could put him at a substantial disadvantage in proceeding to trial without the assistance of counsel.
Based on our review of the record in this case, we conclude that the third criterion of Bellevue was not met. The court gave an explanation of certain technical rules that would apply at trial, and Nordstrom stated that he understood what the court said. But the court did not explain to Nordstrom the link between the existence of these technical rules and the dangers of proceeding pro se.
We hasten to add that there is no bright line rule as to the adequacy of a court's explanation of the dangers of proceeding to trial without counsel. But the record must somehow reflect that the accused was advised that the decision to proceed to trial without the assistance of counsel carries with it substantial risks and disadvantages.[12] This record is deficient in that respect.
*950 The State relies on a recent decision by the Court of Appeals, City of Tacoma v. Bishop,[13] to support its argument that a defendant may impliedly waive his right to counsel by his dilatory conduct. Defendant Bishop repeatedly appeared without counsel, despite the court's grant of several continuances to enable him to obtain counsel. The court observed that the right to counsel could be relinquished by waiver, forfeiture, or waiver by conduct.[14] The court found that Bishop had not expressly waived his right to counsel, nor was his dilatory conduct egregious enough to result in forfeiture of his right to counsel. The court left open the possibility that Bishop's conduct might constitute waiver by conduct.[15] It held, however, that the trial court's failure to warn Bishop of the dangers and consequences of proceeding pro se precluded a finding of such a waiver.[16]
Under Bishop, a defendant may waive his right to counsel by his dilatory conduct only if the court warns him of the "dangers and consequences" of self-representation.[17] Like Bishop, Nordstrom was told repeatedly to obtain counsel, and granted continuances for that purpose. The court did not, however, adequately warn him about the dangers of proceeding pro se. Thus, our holding here is consistent with Bishop.
In State v. Johnson, this court found waiver by conduct.[18] Like Nordstrom, Johnson was found ineligible for a public defender and was repeatedly advised to hire an attorney. The trial court also informed Johnson of his right to an attorney and of the risks of proceeding pro se.[19] During the 11-week period between his arraignment and trial, Johnson contacted one attorney. He told the court that he could not afford private counsel or take time off work to find a lawyer to represent him. This court held that Johnson's "almost complete inaction" constituted a waiver of his right to counsel.[20] But again, the trial court had fully advised Johnson of the risks of self-representation. Thus, our ruling here is consistent with Johnson.
We reverse the superior court order affirming the conviction.
NOTES
[1] Faretta v. California, 422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562 (1975).
[2] Const. art. 1, 22 (amend. 10); U.S. Const. amend. 6.
[3] State v. DeWeese, 117 Wash.2d 369, 377, 816 P.2d 1 (1991).
[4] State v. Hahn, 106 Wash.2d 885, 895, 726 P.2d 25 (1986).
[5] State v. Dennison, 115 Wash.2d 609, 620, 801 P.2d 193 (1990) (citing State v. Chavis, 31 Wash. App. 784, 787, 644 P.2d 1202 (1982) (determining that the validity of waiver of counsel is within the discretion of the trial judge)).
[6] Brewer v. Williams, 430 U.S. 387, 403, 97 S.Ct. 1232, 1242, 51 L.Ed.2d 424 (1977) (quoting Brown v. Allen, 344 U.S. 443, 507, 73 S.Ct. 437, 446, 97 L.Ed. 469 (1953) (Frankfurter, J., separate opinion)).
[7] United States v. Villa-Fabela, 882 F.2d 434, 437 (9th Cir.1989) (de novo review for claims that waiver of counsel not knowing and intelligent); United States v. McConney, 728 F.2d 1195, 1203 (9th Cir.) (de novo review appropriate where there is mixed question of law and fact involving constitutional rights, cert. denied, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46) (1984).
[8] State v. Ford, 110 Wash.2d 827, 831, 755 P.2d 806 (1988); see RALJ 9.1(b).
[9] 103 Wash.2d 203, 211, 691 P.2d 957 (1984); see also State v. Buelna, 83 Wash.App. 658, 660-61, 922 P.2d 1371 (1996).
[10] Acrey, 103 Wash.2d at 211, 691 P.2d 957.
[11] Acrey, 103 Wash.2d at 211, 691 P.2d 957.
[12] See e.g., State v. Joyner, 69 Wash.App. 356, 362, 848 P.2d 769 (1993) (judge advised accused of technical rules and several times warned of disadvantage of self-representaton); State v. Johnson, 33 Wash.App. 15, 19, 651 P.2d 247 (1982) (court advised accused of technical rules and that the decision to proceed pro se relinquished the opportunity to have the assistance of a skilled and trained person); review denied, 99 Wash.2d 1001 (1983); Maynard v. Meachum, 545 F.2d 273, 279 (1st Cir.1976) (although no "particular piece of information" is required, court must convey a "sense of the magnitude of the undertaking and the `disadvantages of self-representation'"); Hodge v. United States, 414 F.2d 1040, 1043 (9th Cir.1969) (proper question is whether accused understands he will be on his own in a complex area where experience and professional training would be very helpful).
[13] 82 Wash.App. 850, 860, 920 P.2d 214 (1996).
[14] Bishop, 82 Wash.App. at 858, 920 P.2d 214, drawing this three-tiered analysis from United States v. Goldberg, 67 F.3d 1092 (3d Cir.1995).
[15] Bishop, 82 Wash.App. at 860, 920 P.2d 214.
[16] Bishop, 82 Wash.App. at 860, 920 P.2d 214.
[17] Bishop, 82 Wash.App. at 860, 920 P.2d 214.
[18] 33 Wash.App. 15, 651 P.2d 247 (1982).
[19] Johnson, 33 Wash.App. at 18-19, 651 P.2d 247.
[20] Johnson, 33 Wash.App. at 23, 651 P.2d 247.