[No. 5549–1. Division One. September 25, 1978.]

THE STATE OF WASHINGTON, *Respondent,* v. LEWIS DONALD FRITZ, *Appellant.*

*Richard Hansen* of *Seattle–King County Public Defender,* for appellant.

*Christopher T. Bayley, Prosecuting Attorney,* and *Lee Yates, Deputy,* for respondent.

ANDERSEN, A.C.J.—

FACTS OF CASE

An all night poker game at a residence in the town of Clyde Hill was abruptly terminated at 4 a.m. on April 19, 1975, when two men kicked in the front door and lined the card players up against a wall at gunpoint.

Officers of the Clyde Hill and Bellevue police departments promptly responded to a call from one of the participants in the game who had managed to escape. The officers captured the defendant and a companion at the scene, located a sawed–off shotgun and automatic pistol nearby and recovered the approximately $3,000 taken from the players.

Three separate trial dates had to be set for the defendant's case. The first date was stricken because the defendant skipped bail and had to be extradited from Florida. The second was reset due to a last minute substitution of new defense counsel at the defendant's request. A month

before the third trial date which had been set, the defendant moved to dismiss his new counsel and represent himself, but withdrew that motion after he and his attorney appeared to have settled their differences as to how to proceed. Then, on the morning of the third trial date, the defendant moved to represent himself and sought another continuance, requests which were denied. The case was tried before a jury.

The defendant was convicted of two counts of robbery and two counts of attempted robbery. Special verdicts were returned finding that he was armed with a deadly weapon and firearm at the time.

One issue is determinative of the defendant's appeal.

## ISSUE

Does a defendant in a criminal case have such an unqualified right of self–representation that it is always error for a trial court to deny that right regardless of when and under what circumstances it is claimed?

## DECISION

CONCLUSION. A defendant in a criminal case does have a constitutional right to defend himself or herself, but the judicious and orderly administration of justice requires that certain procedural requirements be observed in order to assert such right.

The right of a defendant charged with the commission of a crime to act as his or her own lawyer has previously been before the courts of this state, notably in *State v. Kolocotronis*, 73 Wn.2d 92, 436 P.2d 774 (1968) and *State v. Woodall*, 5 Wn. App. 901, 491 P.2d 680 (1971). Those cases well illustrate the inherent problems confronting a trial judge when faced with a defendant's request to act pro se. In *Woodall*, the defendant asked for the right, was granted it and then claimed that the trial court erred in giving him the right to represent himself. In *Kolocotronis*, the defendant, who frequently had been confined to mental institutions, also asked for the right, was granted it in part and then assigned error to the trial court's permitting appointed

counsel to assist him with portions of the trial. The convictions in both *Woodall* and *Kolocotronis* were affirmed, and certain guidelines were laid down for the handling of such cases.

Subsequent to *Kolocotronis* and *Woodall*, however, the United States Supreme Court reassessed all of its previous decisions on the subject. *Faretta v. California*, 422 U.S. 806, 45 L. Ed. 2d 562, 95 S. Ct. 2525 (1975). *Faretta* added new dimensions to the task already confronting the trial courts in such cases.

The right of defendants in criminal prosecutions to appear and defend in person or by counsel has long been conferred by statute in federal cases, 28 U.S.C. § 1654 (1970),[1] and it has been conferred by state constitutional provisions in Washington and most other states. *See Faretta v. California*, 422 U.S. at 813–14; Const. art. 1, § 22.

*Faretta* involved the defendant in a state criminal prosecution. There the United States Supreme Court, in a sharply divided decision, held that the sixth amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment, guaranteed the defendant the right to represent himself without counsel.[2] The court ruled that the courts of the state of California erred when they forced Mr. Faretta to accept an appointed public defender and refused his request to conduct his own defense.

■ While *Faretta* declared a constitutional right, it did, as noted by Justice Blackmun in his dissent, leave open a host of procedural questions. *See Faretta v. California,*

---

[1] *See* Annot., 27 A.L.R. Fed. 485 (1976).

[2] Chief Justice Burger commenced his dissent thusly:
"This case, like *Herring* v. *New York* [422 U.S. 853, 45 L. Ed. 2d 593, 95 S. Ct. 2550 (1975)], *post,* p. 853, announced today, is another example of the judicial tendency to constitutionalize what is thought 'good.' That effort fails on its own terms here, because there is nothing desirable or useful in permitting every accused person, even the most uneducated and inexperienced, to insist upon conducting his own defense to criminal charges. Moreover, there is no constitutional

358

dissent of Blackmun, J., 422 U.S. at 846. Many cases have since considered those open procedural questions, particularly the courts in the state of California from whence *Faretta* arose. In the process, certain rules have evolved relative to a defendant's exercise of his or her right of self-representation in a criminal case. That right, and the generally accepted procedures for implementing and asserting that right, can be stated in eight basic principles.

1. Every defendant in a criminal case has an independent constitutional right to represent himself or herself without the assistance of legal counsel. *Faretta v. California*, 422 U.S. 806, 45 L. Ed. 2d 562, 95 S. Ct. 2525 (1975).

The rationale of this principle is explained by the majority opinion in *Faretta:*

> It is undeniable that in most criminal prosecutions defendants could better defend with counsel's guidance than by their own unskilled efforts. But where the defendant will not voluntarily accept representation by counsel, the potential advantage of a lawyer's training and experience can be realized, if at all, only imperfectly. To force a lawyer on a defendant can only lead him to believe that the law contrives against him. Moreover, it is not inconceivable that in some rare instances, the defendant might in fact present his case more effectively by conducting his own defense. Personal liberties are not rooted in the law of averages. The right to defend is personal. The defendant, and not his lawyer or the State, will bear the personal consequences of a conviction. It is the defendant, therefore, who must be free personally to decide whether in his particular case counsel is to his advantage. And although he may conduct his own defense ultimately to his own detriment, his choice must be honored out of "that respect for the individual which

---

basis for the Court's holding, and it can only add to the problems of an already malfunctioning criminal justice system. I therefore dissent." (Footnote omitted.) *Faretta v. California*, 422 U.S. 806, 836–37, 45 L. Ed. 2d 562, 95 S. Ct. 2525 (1975).

Justice Blackmun in his separate dissent concluded:

"If there is any truth to the old proverb that 'one who is his own lawyer has a fool for a client,' the Court by its opinion today now bestows a *constitutional* right on one to make a fool of himself." *Faretta v. California*, 422 U.S. at 852.

is the lifeblood of the law." *Illinois* v. *Allen* [397 U.S. 337, 25 L. Ed. 2d 353, 90 S. Ct. 1057 (1970], 397 U.S. 337, 350–351 (Brennan, J., concurring).

(Footnote omitted.) *Faretta v. California,* 422 U.S. at 834.

2. In order to exercise this right, it is incumbent on the defendant to request it, and the court is not initially required to advise a defendant of that right. *People v. Salazar,* 74 Cal. App. 3d 875, 141 Cal. Rptr. 753, 761 (1977); *People v. Enciso,* 25 Cal. App. 3d 49, 101 Cal. Rptr. 590, 594 (1972).

The reason for this has been bluntly put:

Unlike the right to the *assistance* of counsel, the right to dispense with such assistance and to represent oneself is guaranteed not because it is essential to a fair trial but because the defendant has a personal right to be a fool. This right is afforded the defendant *despite* the fact that its exercise will almost surely result in detriment to both the defendant and the administration of justice. (*People* v. *McDaniel,* 16 Cal.3d 156, 164–166 [127 Cal. Rptr. 467, 545 P.2d 843].) It would be fundamentally unwise to impose a requirement that the court advise or suggest to a defendant this procedure which is likely to be to no one's benefit.

*People v. Salazar,* 74 Cal. App. 3d at 888, 141 Cal. Rptr. at 761.

3. The right must be exercised knowingly and intelligently. As expressed in *Faretta v. California,* 422 U.S. at 835:

When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must "knowingly and intelligently" forgo those relinquished benefits. *Johnson* v. *Zerbst* [304 U.S. 458, 82 L. Ed. 1461, 58 S. Ct. 1019 (1938)], 304 U.S., at 464–465. Cf. *Von Moltke* v. *Gillies* [332 U.S. 708, 92 L. Ed. 309, 68 S. Ct. 316 (1948)], 332 U.S. 708, 723–724 (plurality opinion of Black, J.). Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self–representation, he should be made aware of the dangers and disadvantages

of self–representation, so that the record will establish that "he knows what he is doing and his choice is made with eyes open." *Adams* v. *United States ex rel. McCann* [317 U.S. 269, 87 L. Ed. 268, 63 S. Ct. 236 (1942)], 317 U.S., at 279.

In assessing the knowledgeable exercise of a defendant's right of self–representation, a showing of technical legal knowledge is not required, *People v. Freeman,* 76 Cal. App. 3d 302, 142 Cal. Rptr. 806, 809 (1977), although mental competency to waive counsel and act as one's own counsel is obviously required. *State v. Kolocotronis, supra* at 98–102; Annot., 77 A.L.R.2d 1233, 1235 (1961). In this connection, it should be observed that to the extent that *State v. Kolocotronis, supra,* may suggest that lack of technical competence can justify denying a motion for self–representation, it has been overruled by *Faretta v. California, supra.*

A basic constitutional right, which the defendant who elects pro se representation waives, is the right to be represented by counsel, a right which is cherished by most. Furthermore, the pro se defendant will bear the consequences of his or her own representation and cannot on appeal complain of the quality of his or her defense. *Faretta v. California,* 422 U.S. at 835–36 n.46; *Chapman v. United States,* 553 F.2d 886, 892 (5th Cir. 1977).

4. A demand to defend pro se must be stated unequivocally. *Chapman v. United States, supra; People v. Potter,* 77 Cal. App. 3d 45, 143 Cal. Rptr. 379, 382 (1978). This is because of the seriousness of the decision and the important rights which a defendant waives by asserting the right to defend pro se. *Chapman v. United States, supra.* Even when the right is unequivocally asserted, however, it may still be subsequently waived by words or conduct. *United States v. Montgomery,* 529 F.2d 1404, 1406 (10th Cir.), *cert. denied,* 426 U.S. 908, 48 L. Ed. 2d 833, 96 S. Ct. 2231 (1976).

5. The demand must be timely made. *People v. Windham,* 19 Cal. 3d 121, 127, 560 P.2d 1187, 1191, 137 Cal.

Rptr. 8 (1977); *People v. Sewell,* 71 Cal. App. 3d 114, 139 Cal. Rptr. 389, 393 (1977); *Chapman v. United States,* 553 F.2d at 893–95. This is necessary for possible disruptions to be minimized and continuity in the handling of the case to be maintained. *Chapman v. United States,* 553 F.2d at 893.

To be timely, the demand for self–representation should be made a reasonable time before trial. As the Supreme Court of California expressed it in *People v. Windham,* 19 Cal. 3d at 127, 560 P.2d at 1191:

> The experience of other jurisdictions in dealing with the procedural implementation of a constitutionally based right of self–representation demonstrates that the requirement of a pretrial motion to that effect is a workable and appropriate predicate to the exercise of the *Faretta* right.

The cases which have considered the timeliness of a proper demand for self–representation have generally held: (a) if made well before the trial or hearing and unaccompanied by a motion for continuance, the right of self–representation exists as a matter of law; (b) if made as the trial or hearing is about to commence, or shortly before, the existence of the right depends on the facts of the particular case with a measure of discretion reposing in the trial court in the matter; and (c) if made during the trial or hearing, the right to proceed pro se rests largely in the informed discretion of the trial court. *See People v. Windham,* 19 Cal. 3d at 128, 560 P.2d at 1191; *Chapman v. United States,* 553 F.2d at 893–95 and authorities therein discussed.

6. The right to proceed pro se cannot be used as a means of unjustifiably delaying a scheduled trial or hearing or to obstruct the orderly administration of justice. *Chapman v. United States,* 553 F.2d at 894–95; *People v. Windham,* 19 Cal. 3d at 128, 560 P.2d at 1191.

This principle is in a sense a function of the requirement that a motion to defend pro se be timely made (see principle 5 above), but for purposes of analysis, it is more appropriately considered as a separate principle.

In regard to motions for self–representation which are not made until at or shortly before the trial or hearing is ready to commence, *People v. Windham* is instructive:

Our imposition of a "reasonable time" requirement should not be and, indeed, must not be used as a means of limiting a defendant's *constitutional* right of self–representation. We intend only that a defendant should not be allowed to misuse the *Faretta* mandate as a means to unjustifiably delay a scheduled trial or to obstruct the orderly administration of justice. For example, a defendant should not be permitted to wait until the day preceding trial before he moves to represent himself and requests a continuance in order to prepare for trial without some showing of reasonable cause for the lateness of the request. In such a case the motion for self–representation is addressed to the sound discretion of the trial court which should consider relevant factors such as whether or not defense counsel has himself indicated that he is not ready for trial and needs further time for preparation. Thus if the reason why a defendant makes a request for self–representation in close proximity to trial is because he disagrees with his appointed counsel's desire for a continuance, some delay may be necessary whether or not the defendant's motion is granted. In such a case the very reason underlying the request for self–representation supplies a reasonable justification for the delayed motion. Furthermore, as defense counsel himself seeks a continuance for the purpose of further trial preparation it would be illogical to deny a motion for self–representation under such circumstances simply because the motion is made in close proximity to trial. There may be other situations in which a request for self–representation in close proximity to trial can be justified. When the lateness of the request and even the necessity of a continuance can be reasonably justified the request should be granted. When, on the other hand, a defendant merely seeks to delay the orderly processes of justice, a trial court is not required to grant a request for self–representation without any ability to test the request by reasonable standards.

*People v. Windham,* 19 Cal. 3d at 128 n.5, 560 P.2d at 1191 n.5.

As to motions for self–representation made during a trial or hearing, that same case holds that

When such a midtrial request for self–representation is presented the trial court shall inquire *sua sponte* into the specific factors underlying the request thereby ensuring a meaningful record in the event that appellate review is later required. Among other factors to be considered by the court in assessing such requests made after the commencement of trial are the quality of counsel's representation of the defendant, the defendant's prior proclivity to substitute counsel, the reasons for the request, the length and stage of the proceedings, and the disruption or delay which might reasonably be expected to follow the granting of such a motion. Having established a record based on such relevant considerations, the court should then exercise its discretion and rule on the defendant's request.

(Footnote omitted.) *People v. Windham,* 19 Cal. 3d at 128–29, 560 P.2d at 1191–92.

The importance of making an adequate record in all such cases is again underscored in *State v. Garcia,* 21 Wn. App. 58, 583 P.2d 1253 (1978).

7. The right of self–representation cannot be permitted to justify a defendant disrupting a hearing or trial, or as a license to a pro se defendant to not comply with relevant rules of procedural and substantive law. *Faretta v. California,* 422 U.S. 806, 834–35 n.46, 45 L. Ed. 2d 562, 95 S. Ct. 2525 (1975).

"Moreover, the trial judge may terminate self–representation by a defendant who deliberately engages in serious and obstructionist misconduct." *Faretta v. California,* 422 U.S. at 834–35 n.46; *People v. Freeman,* 76 Cal. App. 3d at 308, 142 Cal. Rptr. at 809.

8. Standby counsel may be appointed even over objection by the accused to aid the accused if and when he or she requests help, and to be available to represent the accused in the event that termination of the defendant's self–representation becomes necessary (see principle 7 above). *Faretta v. California,* 422 U.S. at 834–35 n.46.

We turn now from the applicable legal principles to the facts of the case at bench.

On the day set for trial, the defendant unequivocally demanded to represent himself pro se and to proceed without counsel. The trial court denied the request stating, "[i]f I have discretion, I choose to exercise it in this particular instance, and the motion for the withdrawal of counsel is denied."

The trial court later entered findings to the effect that while the defendant was competent to stand trial, he was not competent to intelligently waive counsel or to act as his own counsel. We have carefully reviewed the trial court's written findings, oral rulings and record in this regard and are unable to determine if the trial court's finding as to lack of competency relates to a lack of *mental competency,* as in *State v. Kolocotronis,* 73 Wn.2d 92, 436 P.2d 774 (1968), which would be a valid ground on which to deny the motion, or to a lack of *technical competency* (*e.g.,* inadequate legal or forensic abilities) which would not be a valid ground. (See principle 3 above.)

There is no substantial evidence in the record that the defendant was not mentally competent. In fact, the contrary appears. The deputy prosecuting attorney acknowledged, "I think it is clear from hearing [the defendant] that there is no question he knows what he is doing, . . ." A psychiatrist who examined the defendant prior to his being sentenced concurred, as did the defendant and defense counsel. The defendant was articulate, quite well educated and experienced in such matters, having served some 20 years in various penal institutions and having evidently represented himself previously.

 It is the law of this state, however, that this court will sustain the trial court's decision on any appropriate ground within the pleadings and proof, even though it is not the ground assigned by the trial court. *Northwest Collectors, Inc. v. Enders,* 74 Wn.2d 585, 595, 446 P.2d 200 (1968); *In re Marriage of Lukens,* 16 Wn. App. 481, 487–88, 558 P.2d 279 (1976).

A clearer case of a defendant doing everything possible to delay his scheduled trial and obstruct the orderly course of the administration of justice would be difficult to imagine. The defendant avoided his first trial date by fleeing the state, and his second by obtaining a substitution of counsel and a continuance on the eve of trial. On the morning of the third date set for his trial, a date which was over a year and one half following the first trial date, he sought to discharge his new attorney, represent himself and obtain yet another continuance of the trial. This was in the face of demonstrated and understandable difficulties encountered by the prosecuting attorney in trying to keep the State's witnesses available for trial through the various and lengthy postponements. The processes of the law cannot be thus subverted. We hold that under these circumstances the trial court did have discretion to deny the defendant's motion to represent himself without the assistance of counsel and did not abuse that discretion in so ruling. (See principles 5 and 6 above.)

■ Our decision on the constitutional right of personal representation accords with accepted constitutional doctrine, that even fundamental human rights are not absolute in and of themselves. *United Pub. Workers of America v. Mitchell,* 330 U.S. 75, 95, 91 L. Ed. 754, 67 S. Ct. 556 (1947); *Kovacs v. Cooper,* 336 U.S. 77, 93 L. Ed. 513, 69 S. Ct. 448 (1949); *State v. Kolocotronis, supra* at 98.

Our holding also accords with the generally accepted criminal law procedural rule that

> If a last–minute motion for substitution of counsel is made for the purpose of delay, the court can recognize it as such and either refuse to make a new appointment or deny a continuance if one is made. *Cf.* Cleveland v. United States, 116 U.S. App. D.C. 188, 322 F.2d 401 (D.C. Cir.), *cert. denied,* 375 U.S. 884 (1963).

ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Providing Defense Services § 5.3(b) (Approved Draft, 1968). *Accord, State v. Garcia, supra.*

The defendant's remaining assignment of error does not require extensive discussion. When the defendant testified at the trial, it was brought out that he had several prior robbery convictions as well as convictions on kidnapping, bad check and escape charges. He contends that the statute which authorizes the showing of such convictions to impeach his credibility, RCW 10.52.030, is unconstitutional. Subsequent to the filing of his appellate brief in this case, *State v. Ruzicka,* 89 Wn.2d 217, 570 P.2d 1208 (1977) and *State v. Carter,* 89 Wn.2d 236, 570 P.2d 1218 (1977) were decided. These decisions answered the defendant's contentions in this regard in the negative.

Affirmed.

JAMES and WILLIAMS, JJ., concur.

Reconsideration denied December 20, 1978.

Review denied by Supreme Court April 20, 1979.